## STATE OF CONNECTICUT *v.* DAVID PALMER
### (AC 22712)

Foti, Schaller and Dupont, Js.

Argued September 15—officially released October 28, 2003

*Michael A. D'Onofrio*, special public defender, for the appellant (defendant).

*Frederick W. Fawcett*, supervisory assistant state's attorney, with whom, on the brief, were *Jonathan C. Benedict*, state's attorney, and *Howard S. Stein*, assistant state's attorney, for the appellee (state).

*Opinion*

FOTI, J. The defendant, David Palmer, appeals from the judgment of conviction,[1] rendered after a jury trial, of assault in the second degree in violation of General Statutes § 53a-60 (a) (2).[2] On appeal, the defendant claims that the trial court improperly refused to charge the jury, as requested, on the issue of self-defense. We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. On July 22, 1999, at approximately 8:30 p.m., Susan DeFrancesco drove her car to a bank in Bridgeport, where she attempted to use the bank's automated teller machine. Patrick Kelley was a passenger in her car. DeFrancesco discovered that the automated teller machine was not functioning. As she returned to her

---

[1] The jury found the defendant not guilty of the charged crime of robbery in the first degree in violation of General Statutes § 53a-134 (a) (3). The state also entered a nolle prosequi as to the charge of failure to appear in the first degree in violation of General Statutes § 53a-172.

[2] General Statutes § 53a-60 (a) provides in relevant part: "A person is guilty of assault in the second degree when . . . (2) with intent to cause physical injury to another person, he causes such injury to such person or to a third person by means of a deadly weapon or a dangerous instrument other than by means of the discharge of a firearm . . . ."

car, the defendant approached and gave her directions to another automated teller machine at a bank on Boston Avenue. DeFrancesco drove to that location and entered the bank lobby while Kelley remained in the car. While DeFrancesco was accessing the automated teller machine, the defendant entered the bank lobby and, after she completed her transaction, pressed a sharp object against her back. The defendant demanded that DeFrancesco give him the money that she was holding, three $20 bills. A struggle ensued as the defendant tore parts of the bills from DeFrancesco's grip. The defendant, carrying the torn currency, ran from the bank lobby.

Kelley, still waiting in the car, saw the defendant run out of the bank and heard DeFrancesco's screams. The circumstances convinced Kelley that the defendant had robbed DeFrancesco, and Kelley tried to prevent the defendant from fleeing the scene. A struggle ensued between Kelley and the defendant, and the defendant stabbed Kelley with a screwdriver,[3] leaving Kelley to feel what he described as "quite a bit of pain" in his back. The defendant broke away from Kelley and ran to a car. Kelley ran to the car and, again, attempted to stop the defendant from leaving. Kelley grabbed the defendant through the open window of the car. Kelley relinquished his grasp only after the defendant quickly accelerated the vehicle, causing Kelley to fall away from the vehicle and tumble onto the pavement of the parking lot.

---

[3] In addition to hearing testimony from DeFrancesco and Kelley about these events, the jury heard testimony from an eyewitness, Robert Marcantonio. The jury reasonably could have found that Marcantonio had observed the defendant struggling with DeFrancesco and heard DeFrancesco scream, "Help me, I'm being robbed." Marcantonio also saw Kelley and the defendant struggling, saw the defendant make a stabbing motion to Kelley's neck area with a screwdriver, saw Kelley pursue the defendant and saw Kelley being dragged briefly by the defendant's car while the defendant was driving away from the bank. Marcantonio also informed a police officer on patrol and alerted him to the events that were transpiring.

At trial, the defendant requested that the court instruct the jury on the issue of self-defense and to consider whether his actions were justified.[4] The court determined that the evidence presented at trial did not warrant the instruction and declined to deliver it. The defendant claims that the court "erred in failing to give [his] requested jury charge . . . and thus deprived [him] of his right to due process and [his right to] present a defense." The defendant's claim is without merit.

"We first set forth the relevant standard of review for a claim of instructional error. When reviewing the challenged jury instruction . . . we must adhere to the well settled rule that a charge to the jury is to be considered in its entirety, read as a whole, and judged by its total effect rather than by its individual component parts. . . . [T]he test of a court's charge is not whether it is as accurate upon legal principles as the opinions of a court of last resort but whether it fairly presents the case to the jury in such a way that injustice is not done to either party under the established rules of law. . . . As long as [the instructions] are correct in law, adapted to the issues and sufficient for the guidance of the jury . . . we will not view the instructions as improper." (Citation omitted; internal quotation marks omitted.) *State* v. *Betances*, 265 Conn. 493, 509–10, 828 A.2d 1248 (2003).

"In determining whether the defendant is entitled to an instruction of self-defense, we must view the evi-

[4] The defendant requested that the court instruct the jury that the evidence in the case raised the issue of self-defense and that the state bore the burden of disproving the defense beyond a reasonable doubt. The defendant's requested charge included language from General Statutes § 53a-19, as well as instructions as to how the jury should evaluate the defendant's conduct and beliefs insofar as they related to the defense.

The defendant's written request fell short of the requirements set forth in Practice Book § 42-18. The request did not contain either a citation of authority on which it was based or a statement of the evidence that justified the self-defense instruction. Despite those deficiencies, we nevertheless choose to review the claim.

dence most favorably to giving such an instruction." *State* v. *Lewis*, 245 Conn. 779, 812, 717 A.2d 1140 (1998). Even after viewing the facts in the light most favorable to the defendant, we must conclude that there exists no justification under the facts and circumstances as presented in the matter for the court to have found that he was entitled to an instruction on self-defense.[5] The defendant, who bore "the initial burden of producing sufficient evidence to inject self-defense into the case"; (internal quotation marks omitted) *State* v. *Lewis*, 220 Conn. 602, 619, 600 A.2d 1330 (1991); has failed to satisfy that burden. "To meet that burden, the evidence adduced at trial, whether by the state or the defense, must be sufficient to raise a reasonable doubt in the mind of a rational juror as to whether the defendant acted in self-defense." (Internal quotation marks omitted.) *State* v. *Carter*, 232 Conn. 537, 545, 656 A.2d 657 (1995). In this case, the defendant did not sustain his initial burden, minimal though it was, of injecting sufficient evidence so as to raise such a doubt in the minds of the jurors.

Furthermore, we are mindful that a " 'trial court should submit no issue to the jury which is foreign to the facts in evidence, or upon which no evidence was offered, and it should not submit to the jury considerations which find no support in the evidence.' " *State* v. *Campbell*, 225 Conn. 650, 659, 626 A.2d 287 (1993), citing *State* v. *Cofone*, 164 Conn. 162, 168, 319 A.2d 381 (1972). The court properly omitted the requested instruction because there was no support in the evidence for the issue of self-defense.

---

[5] The defendant conceded during oral argument before this court that he did not claim, nor was any evidence presented, that Kelley had used either excessive or unnecessary force against him. We need not determine, therefore, whether a self-defense instruction is required where the evidence demonstrates that the person who had apprehended or attempted to apprehend a suspected robber who appeared to be fleeing the crime scene had used such degree of force.

The defendant has cited to several cases that he asserts support his claim that the court improperly refused to deliver the requested instruction. Suffice it to say that we have reviewed the cases cited and find them to be distinguishable factually. In those cases, the facts were sufficient to require a self-defense instruction by the court.

The judgment is affirmed.

In this opinion the other judges concurred.