STATE OF CONNECTICUT *v.* MARK DANIELS
(AC 23053)

Flynn, Bishop and McLachlan, Js.

Argued April 1—officially released June 1, 2004

*James B. Streeto*, assistant public defender, for the appellant (defendant).

*Lisa A. Riggione,* senior assistant state's attorney, with whom, on the brief, were *James E. Thomas,* state's attorney, and *Thomas R. Garcia,* assistant state's attorney, for the appellee (state).

*Opinion*

FLYNN, J. The defendant, Mark Daniels, appeals from the judgment of conviction, rendered after a jury trial, of the crimes of burglary in the first degree in violation of General Statutes § 53a-101 (a) (2), assault in the second degree in violation of General Statutes § 53a-60 (a) (2) and robbery in the first degree in violation of General Statutes § 53a-134 (a) (3). The defendant claims on appeal that the court (1) abused its discretion in refusing to admit into evidence the victim's statements to the defendant's father because no foundation had been laid confronting the victim with the statement with which the defendant sought to impeach the victim, (2) abused its discretion in allowing the state to present rebuttal evidence as to the mistake of the defendant's father about the defendant's date of the arrest, a collateral matter, (3) permitted prosecutorial misconduct in the course of the trial and closing argument, (4) improperly denied his motion for a judgment of acquittal on the basis of insufficiency of the evidence because there was no evidence establishing that the defendant took the victim's wallet and (5) improperly instructed the jury on the state's burden of proof beyond a reasonable doubt. We affirm the judgment of the trial court.

The record discloses that the jury reasonably could have found the following facts. The victim, Ronald Pusey, lived in an apartment located on Albany Avenue in Hartford. On December 9, 2000, he spent time shopping and drinking with a former companion, Tiandra Johnson. The victim gave Johnson keys to his apartment so that she could use the bathroom while he went to the grocery store. When he returned to his building, he

encountered Johnson talking with his stepdaughter and the building superintendent. Johnson and the victim then went into the apartment after which Johnson again borrowed the apartment key and some money from the victim and left to go to the grocery store. When Johnson returned to the apartment, she went into the room of a female boarder named Daphne, who was not at home, but who normally kept her door locked. Johnson then went into the bathroom. While the victim was in his kitchen, Johnson entered the kitchen accompanied by a tall man with a black cloth that concealed his face. He held a gun over Johnson's shoulder and demanded money from the victim. Johnson did not come to the victim's aid, but left the apartment after the victim requested that she get his superintendent for help. The victim lunged at the masked man, and the two men struggled and fell to the floor where the victim tore the screen off the intruder's face. The victim recognized the unmasked man as the defendant. The defendant struck the victim multiple times with the butt of the gun, including a strike across his face. During the struggle, the gun discharged. The victim lost consciousness momentarily. When he awoke, he noticed that he was alone in the apartment and that his wallet, which contained approximately $600, was gone. Because he thought when he regained consciousness that both telephone lines were dead, he ran to a nearby grocery store and asked a person there to call the police. He returned to his apartment where he found Johnson talking on the telephone.

When the police came to the victim's apartment, he accused Johnson of assisting in the robbery by "setting him up" and named the defendant as his assailant. He was taken to a hospital by ambulance where he suffered a seizure and again lost consciousness, but not before he told an emergency medical technician that he had been assaulted by either his niece's boyfriend or his

stepdaughter's boyfriend. After being hospitalized, the victim was shown an array of photographs by the police, and he identified the photograph of the defendant as the person who had assaulted him. The victim also told the police that they should arrest Johnson, whereupon he was told that the police did not have sufficient evidence to do so.

I

We first address the defendant's claim that the court abused its discretion in refusing to admit into evidence a telephonic statement made out of court by the victim to the defendant's father in which the victim indicated that he was "at best indefinite" that the defendant was the person who had assaulted and robbed him. The defendant properly preserved this issue for appeal by making an offer of proof after the state objected to defense counsel's attempt to elicit this information from the defendant's father during his direct examination. The defendant claimed the evidence was admissible as a prior inconsistent statement of the victim. The state objected on the ground that no foundation had been laid because there was no direct testimony about it, and the victim had not been asked about this statement when defense counsel cross-examined him. The court sustained the objection because of a lack of foundation. The court acknowledged that § 6-10 (c) of the Connecticut Code of Evidence granted it discretion to admit the testimony, but stated that it would follow standard practice and decline to admit the evidence.

"We review evidentiary claims pursuant to an abuse of discretion standard. Generally, [t]rial courts have wide discretion with regard to evidentiary issues and their rulings will be reversed only if there has been an abuse of discretion or a manifest injustice appears to have occurred. . . . Every reasonable presumption will be made in favor of upholding the trial court's

ruling, and it will be overturned only for a manifest abuse of discretion." (Internal quotation marks omitted.) *Stanley* v. *Lincoln*, 75 Conn. App. 781, 785, 818 A.2d 783 (2003).

There is nothing in the record before us to indicate that the victim ever admitted making the statement. We therefore believe that the second sentence of § 6-10 (c) of the Connecticut Code of Evidence applies. It provides: "If a prior inconsistent statement made by a witness is not shown to or if the contents of the statement are not disclosed to the witness at the time the witness testifies, extrinsic evidence of the statement is inadmissible, except in the discretion of the court." Extrinsic evidence comes from someone other than the person whose statement is being challenged by the evidence. "Proof that a witness has made a prior inconsistent statement, by extrinsic evidence . . . is not generally permissible unless the witness has first been asked about the statement . . . ." C. Tait, Connecticut Evidence (3d Ed. 2001) § 6.35.5, p. 486. In *State* v. *Saia*, 172 Conn. 37, 46, 372 A.2d 144 (1976), our Supreme Court held that we have no inflexible rule regarding the necessity of calling the attention of a witness to his prior inconsistent statement before offering extrinsic evidence about it. Rather, "[t]he trial court is vested with a liberal discretion as to how the inquiry should be conducted in any given case." Id.

The defendant has not provided us with a record indicating why the victim was not asked whether he had a conversation with the defendant's father and whether he had indicated to the father that he "was at best indefinite" about who had assaulted and robbed him. The defendant argues that the fact of whether a robbery had occurred was not really at issue in the trial, but only whether the defendant and not some other person was the perpetrator. Although that appears to be true, it does not explain why the defendant did not

cross-examine the victim about the identity of the defendant. If the victim had admitted to the conversation on direct examination, it would have been unnecessary to introduce extrinsic evidence on the issue through the defendant's father. See Conn. Code Evid. § 6-10 (c). "It is fundamental that for the purpose of impeaching the credibility of his testimony, a witness may be cross-examined as to statements made out of court or in other proceedings which contradict those made upon direct examination. . . . This is based on the notion that talking one way on the [witness] stand, and another way previously, raises a doubt as to the truthfulness of both statements. . . . The impeachment of a witness by extrinsic evidence is somewhat limited. Not only must the inconsistent statements be relevant and of such a kind as would affect the credibility of the witness . . . but generally a foundation should be laid at the time of cross-examination." (Citations omitted.) *State* v. *Saia*, supra, 172 Conn. 45–46. Under the circumstances of this case, the court's ruling was well within its discretion.

Furthermore, the defendant has not shown how he was harmed. It is axiomatic that "in the review of evidential rulings . . . an appellant has the burden of establishing that there has been an erroneous ruling which was probably harmful to him." (Internal quotation marks omitted.) *State* v. *Tinsley*, 59 Conn. App. 4, 10, 755 A.2d 368, cert. denied, 254 Conn. 938, 761 A.2d 765 (2000). At trial, impeachment evidence was admitted from an emergency attendant who testified that the victim had said that either his niece's boyfriend or his stepdaughter's boyfriend had assaulted him but had not accused the defendant. The victim also was impeached on the basis of his prior felony convictions, his poor eyesight and inability to see well because of darkness in his apartment and about his mistaken notion that the telephone lines had been cut in his apartment. The

jury therefore was presented with significant impeachment evidence that attacked the victim's credibility.

The defendant also claims that the evidentiary ruling made by the court deprived him of the right to present a defense. He did not raise this issue before the trial court and requests review under *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989). The defendant's right to present a defense is governed by the rules of evidence, as long as the rules are not applied "mechanistically to deprive the defendant of his rights." (Internal quotation marks omitted.) *State* v. *Kelly*, 208 Conn. 365, 376, 545 A.2d 1048 (1988). We reject the defendant's attempt to obtain *Golding* review of this essentially evidentiary issue. See *State* v. *Feliciano*, 74 Conn. App. 391, 403–404, 812 A.2d 141 (2002), cert. denied, 262 Conn. 952, 817 A.2d 110 (2003). The defendant was not prohibited from offering a defense. Rather, the defendant's evidence was not admitted pursuant to the court's discretion under the rules of evidence. *State* v. *Jenkins*, 56 Conn. App. 450, 455, 743 A.2d 660, cert. denied, 252 Conn. 947, 747 A.2d 523 (2000).

In sum, we conclude that the court properly exercised its discretion in excluding extrinsic impeachment evidence from the defendant's father for which there had been no evidentiary foundation.

## II

We next turn to the defendant's evidentiary claim that the court improperly permitted evidence regarding his father's mistake about the defendant's date of arrest, which he maintains is a collateral matter. The defendant properly preserved the issue for our review by making a timely objection. We review the court's admission of this evidence to determine whether it constituted a clear abuse of discretion. See *State* v. *Ferraiuolo*, 80 Conn. App. 521, 534, 835 A.2d 1041 (2003), cert. denied, 267 Conn. 916, 841 A.2d 220 (2004).

The following additional facts pertain to this claim. The defendant offered alibi evidence in the form of testimony from his father. His father testified to the jury that the defendant was home with him the entire day of December 9, 2000, when the victim was robbed. The defendant's father was able to recall this date by relating it to another event he could remember, namely, the Saturday on which his wife had gone to her mother's funeral, which was held out of state. On cross-examination, he testified that he thought the defendant's day of arrest was December 15 or December 16, 2000, but that he was not certain of that date. The state called Detective Michael Sheldon as a rebuttal witness after the father had completed his testimony. Sheldon's testimony established that the date of the defendant's arrest was not December 15 or December 16, 2000, but was December 30, 2000. The defendant claims that the court abused its discretion in permitting rebuttal testimony about the date of arrest because that was collateral to the issue being tried, namely, whether the defendant had burglarized the home of the victim on December 9, 2000, and then robbed him after first assaulting him.

"A witness may not be impeached by contradicting his or her testimony as to collateral matters, that is, matters that are not directly relevant and material to the merits of the case." (Internal quotation marks omitted.) *State* v. *Wright*, 62 Conn. App. 743, 757–58, 774 A.2d 1015, cert. denied, 256 Conn. 919, 774 A.2d 142 (2001). "The determination of whether a matter is relevant or collateral, and the scope and extent of cross-examination, generally rests within the sound discretion of the trial court." (Internal quotation marks omitted.) *State* v. *Smith*, 49 Conn. App. 252, 258, 714 A.2d 1243, cert. denied, 247 Conn. 914, 722 A.2d 809 (1998).

The jury was required to determine what amount of credibility to give to the victim's testimony identifying the defendant as his attacker who was in his apartment

and demanded his money at gunpoint. The jury also had to determine what amount of credibility to give to the defendant's father. If the father's testimony was to be believed, then the defendant was somewhere other than the crime scene at the time the crime was alleged to have been committed and could not have been the person who committed the crimes against the victim. Our Supreme Court has stated that "[a] primary consideration in the evaluation of the testimony of any alibi witness is his ability to recall accurately the events of the relevant time period." *State* v. *Villafane*, 171 Conn. 644, 672, 372 A.2d 82 (1976), cert. denied, 429 U.S. 1106, 97 S. Ct. 1137, 51 L. Ed. 2d 558 (1977), overruled in part on other grounds, *State* v. *Stepney*, 191 Conn. 233, 464 A.2d 758 (1983), cert. denied, 465 U.S. 1084, 104 S. Ct. 1455, 79 L. Ed. 2d 772 (1984). The court was well within its discretion to permit the state to offer Sheldon's testimony because it bore on the ability of the defendant's father to recall dates and relate them back to the jury truly and accurately. That credibility issue was central to the case. We therefore conclude that this claim is without merit.

III

We next turn to the defendant's claims that the state engaged in prosecutorial misconduct both during the trial and during closing argument. This claim was not raised before the trial court, and the defendant again requests *Golding* review. Although the record is adequate for review and the claim is of constitutional magnitude, the defendant has failed to show a clear violation of a constitutional right.

A primary inquiry in any claim of prosecutorial misconduct is to determine whether the conduct was in fact improper. *State* v. *Ceballos*, 266 Conn. 364, 375, 832 A.2d 14 (2003); *State* v. *Singh*, 259 Conn. 693, 702, 793 A.2d 226 (2002). Essentially, the defendant argues

that cross-examining his father about the date of the arrest, followed by the rebuttal testimony of Detective Sheldon, amounted to misconduct occurring during the trial and that the prosecutor's arguments to the jury that the father had difficulty in remembering dates was also improper. The defendant claims that by inquiring into and commenting on what he terms a "collateral matter," the prosecutor permitted the jury to conclude possibly that the father merely was mistaken in testifying that his son was home with him all day on December 9, 2000, rather than permitting the jury to conclude potentially that the father was lying, thus creating a convenient "out" for the jury. We have already concluded that the court was well within its discretion to determine that the father's ability to recall dates was not a collateral issue. The credibility and ability of both the victim and the defendant's father to recall events and relate them back truly and accurately to the jury were at issue in the case. The prosecution has the right to comment on facts in evidence and inferences that the jury might draw from them. See *State* v. *Harris*, 48 Conn. App. 717, 720, 711 A.2d 769, cert. denied, 245 Conn. 922, 717 A.2d 238 (1998).

We conclude that the defendant has not made the threshold showing of impropriety by the prosecutor to warrant a further examination into whether the defendant was deprived of a fair trial. Accordingly, we reject this claim.

IV

The defendant next argues that the evidence was insufficient to sustain his conviction of robbery in the first degree. Specifically, the defendant contends that the state was required to prove that he committed larceny, which is an essential element of the crime of robbery, and that because the victim did not witness the defendant actually take his wallet, there was insuffi-

cient evidence to prove that he was the one who had stolen it.

Although the defendant moved for a judgment of acquittal at the close of the evidence on the ground that there was insufficient evidence to establish his guilt, his motion was predicated on the issue of identity and not specifically on the lack of evidence that he had stolen the wallet, which he now raises and for which he seeks review under *State* v. *Golding*, supra, 213 Conn. 239–40. Our Supreme Court, following the dictate of the United States Supreme Court in *Jackson* v. *Virginia*, 443 U.S. 307, 316, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979), has held that any defendant found guilty on the basis of insufficient evidence has been deprived of a constitutional right and therefore would necessarily satisfy the requirements for *Golding* review. *State* v. *Adams*, 225 Conn. 270, 275–76 n.3, 623 A.2d 42 (1993). Accordingly, no practical reason exists to engage in a *Golding* analysis of a sufficiency of the evidence claim and, therefore, we review the challenge as we do any properly preserved claim. See *State* v. *Gentile*, 75 Conn. App. 839, 861, 818 A.2d 88, cert. denied, 263 Conn. 926, 823 A.2d 1218 (2003).

We apply the following standard of review to this claim. "While the jury must find every element proven beyond a reasonable doubt in order to find the defendant guilty of the charged offense, each of the basic and inferred facts underlying those conclusions need not be proved beyond a reasonable doubt. . . . If it is reasonable and logical for the jury to conclude that a basic fact or an inferred fact is true, the jury is permitted to consider the fact proven and may consider it in combination with other proven facts in determining whether the cumulative effect of all the evidence proves the defendant guilty of all the elements of the crime charged beyond a reasonable doubt." (Internal quotation marks omitted.) *State* v. *Nicholson*, 71 Conn. App. 585, 590,

803 A.2d 391, cert. denied, 261 Conn. 941, 808 A.2d 1134 (2002). "[I]n viewing evidence which could yield contrary inferences, the jury is not barred from drawing those inferences consistent with guilt and is not required to draw only those inferences consistent with innocence. . . . When conflicting explanations are presented, the trier is entitled to reject, as less credible, testimony and inferences offered on behalf of the defendant." (Citation omitted; internal quotation marks omitted.) *State* v. *Adams*, supra, 225 Conn. 281. In reviewing such a claim, we apply a two part test. First, we view the evidence in the light most favorable to sustaining the verdict. *State* v. *Wortham*, 80 Conn. App. 635, 640, 836 A.2d 1231 (2003), cert. denied, 268 Conn. 901, 845 A.2d 406 (2004). Second, we determine whether upon the facts so construed and the inferences reasonably drawn therefrom the jury reasonably could have concluded that the cumulative force of the evidence established guilt of the crimes charged beyond a reasonable doubt. Id.

The long form information charged the defendant with having committed robbery in the first degree in violation of § 53a-134 (a) (3) and alleged that "the defendant, in the course of committing a larceny, used and threatened the use of immediate physical force upon another person for the purpose of preventing and overcoming resistance to the taking of property and, in the course of committing the crime of robbery, used or threatened the use of a dangerous instrument." Larceny, a lesser included offense of robbery, is defined in relevant part by General Statutes § 53a-119 as: "A person commits larceny when, with intent to deprive another of property or to appropriate the same to himself or a third person, he wrongfully takes, obtains or withholds such property from an owner . . . ."

The defendant claims that because Johnson was also present and had access to the victim's apartment, it

was possible that she was the one who had stolen the victim's wallet, rather than he. We disagree. From the facts presented at trial and the inferences reasonably drawn therefrom, the jury reasonably could have concluded that the cumulative effect of the evidence established beyond a reasonable doubt that the defendant wrongfully took the victim's wallet with the intent to deprive him of its possession. Specifically, the jury was presented with evidence that the defendant pointed a gun at the victim over Johnson's shoulder and demanded his money. During a struggle between the defendant and the victim, the defendant struck the victim in the face with the butt of the gun while Johnson left the apartment. As the melee continued, the gun discharged and the victim lost consciousness. When the victim awoke minutes later, he was alone in the apartment, and his wallet, which had been in his pocket, was missing.

Although the victim did not see the defendant actually take his wallet, the jury could have inferred from the facts presented at trial, viewed in a light most favorable to sustaining the verdict, that the defendant was the person who took the victim's wallet. Such an inference is supported by evidence indicating that it was the defendant, not Johnson, who pointed a gun at the victim and demanded his money, subsequently assaulted him by striking him in the face with the gun and ultimately knocked him unconscious. This inference also is supported by the evidence that Johnson had not threatened the victim and was not present in the apartment when the victim lost consciousness or at the time he awoke.

On the basis of the foregoing, we conclude that it was reasonable for the jury to find that the cumulative force of the evidence established guilt beyond a reasonable doubt. See *State* v. *Wortham,* supra, 80 Conn. App. 640.

## V

Finally, the defendant seeks *Golding* review of his unpreserved claims regarding the court's instructions to the jury as to reasonable doubt. The defendant claims that the court improperly instructed the jury that (1) a reasonable doubt is "a real doubt, an honest doubt," (2) a reasonable doubt "is not a doubt suggested by counsel, which is not warranted by the evidence," (3) a reasonable doubt is "a doubt that has its foundation in the evidence or lack of evidence" and (4) a reasonable doubt is the kind of doubt upon which reasonable persons would "hesitate to act upon in matters of importance." We review the claims because the record is adequate for our review and the claims are of constitutional magnitude, but we reject the claims because the defendant has not shown that a constitutional violation clearly exists that clearly deprived him of a fair trial. See *State* v. *Golding*, supra, 213 Conn. 239–40.

We recently have reviewed similar claims as to instructional language about real doubt, honest doubt, doubts not warranted by the evidence, doubts not having their foundation in the evidence or lack of evidence and language defining reasonable doubt in terms of a kind of doubt upon which reasonable persons would hesitate to act in matters of importance. See *State* v. *Jones*, 82 Conn. App. 81, 88–91, 841 A.2d 1224 (2004). Little purpose would be served by again plowing that same furrow. We reject these claims for the same reasons we cited in *Jones*.

Regarding the defendant's claim that the court improperly instructed the jury that a reasonable doubt is not "a doubt suggested by counsel, which is not warranted by the evidence," a matter that was not addressed by *Jones*, we conclude that any possible impropriety is insufficient to require a new trial.

"[I]n *State* v. *Delvalle*, [250 Conn. 466, 475, 736 A.2d 125 (1999)], our Supreme Court rejected the claim that the use of ingenuity of counsel language was violative of a defendant's constitutional right to counsel and to a fair trial or that it was plain error. The *Delvalle* court reasoned that the Supreme Court has repeatedly upheld similar language on the ground that [it] did not, when properly considered in the broader context of the trial court's instructions in their entirety, [dilute] the state's burden of proof or otherwise [mislead] the jury in any way. . . .

"Although the court in *Delvalle* rejected the constitutional challenge to the ingenuity of counsel instruction, the court stated that [t]o avoid any possibility of juror confusion arising from the use of the phrase, we invoke our supervisory authority over the administration of justice to direct our trial courts to refrain from using the ingenuity of counsel language in the future." (Internal quotation marks omitted.) *State* v. *Nims*, 70 Conn. App. 378, 384–85, 797 A.2d 1174, cert. denied, 261 Conn. 920, 806 A.2d 1056 (2002).

In the present case, the court did not refer to "ingenuity" of counsel in its charge, but the language used was sufficiently similar in meaning to render it potentially violative of our Supreme Court's directive in *Delvalle*. In determining whether the use of this language necessitates a new trial, we must ascertain whether the jury was misled. "[I]n appeals involving a constitutional question, [the standard is] whether it is reasonably possible that the jury [was] misled. . . . The charge is to be read as a whole and individual instructions are not to be judged in artificial isolation from the overall charge." (Citation omitted; internal quotation marks omitted.) *State* v. *Betances*, 265 Conn. 493, 510, 828 A.2d 1248 (2003).

In *Delvalle*, our Supreme Court held that "ingenuity of counsel" language in charges on reasonable doubt

is improper, but determined that the charge in that case did not warrant a new trial under the circumstances because "[t]he phrase 'not warranted by the evidence' qualifies the 'ingenuity of counsel' language, and renders even more remote any possibility that the jury was misled by the latter phrase." *State* v. *Delvalle*, supra, 250 Conn. 475; see also *State* v. *Betances*, supra, 265 Conn. 510–11. The court's instruction in the present case contained the qualifying phrase, "not warranted by the evidence." We conclude that because the improper phrase was not used in isolation, but rather was qualified, it is not reasonably possible that the jury was misled. See *State* v. *Betances*, supra, 511.

The defendant has not satisfied *Golding*'s third prong because he has not demonstrated that a constitutional violation clearly exists. "Although the court should have avoided the language in question, we conclude that the instructions did not affect the fairness or integrity of the proceedings, nor did they result in a manifest injustice to the defendant." *State* v. *O'Neil*, 67 Conn. App. 827, 837, 789 A.2d 531 (2002).

The judgment is affirmed.

In this opinion the other judges concurred.