698 So.2d 333 (1997)
Tony BENSON, Appellant,
v.
STATE of Florida, Appellee.
No. 96-1183.
District Court of Appeal of Florida, Fourth District.
August 13, 1997.
Clifford H. Barnes, Fort Pierce, for appellant.
Robert A. Butterworth, Attorney General, Tallahassee, and Patricia Ann Ash, Assistant Attorney General, West Palm Beach, for appellee.
PARIENTE, Judge.
The issue we address in this appeal is one of first impression in Florida: whether an exception to the Miranda[1] rule may arise where a suspect is questioned by police in order to address a life-threatening medical emergency. The question in this case stemmed from the officer's objectively reasonable concern, based on his personal observations, over an immediate threat to defendant's health. Under these narrow circumstances, we find that the failure to administer Miranda warnings before asking defendant how much crack cocaine he had swallowed did not require suppression of defendant's inculpatory response. Accordingly, we affirm the trial court's denial of the motion to suppress.
Defendant was the target of an undercover narcotics investigation. As a part of the undercover operation, the Okeechobee County Sheriff's narcotics division equipped a confidential informant with a monitoring device. The surveillance team then both observed and heard defendant and the confidential informant engaging in a drug buy in defendant's vehicle. At some point, defendant exited his vehicle and returned to the passenger compartment with a film canister.
Several officers then converged on the scene to effect an arrest. The confidential informant subsequently testified that defendant said "it's a bust" and "tried to throw the *334 stuff in his mouth." Deputy Hardin, one of the officers at the scene who observed defendant, described defendant's actions as looking as if he were "eating a bag of peanuts [with] his hand cupped to his mouth and dumping something in his mouth." Deputy Hardin informed the other officers that defendant appeared to be "eating something."
Deputy Hardin and several others then entered the vehicle and grabbed defendant's jaw and head in an attempt to prevent him from swallowing the object in his mouth. A surveillance tape recorded several officers yelling expletives and telling defendant to "spit it out." The officers eventually removed defendant from the vehicle, although not before he had swallowed the "object."
Immediately after removing defendant from the vehicle and without first informing defendant of his Miranda rights, Detective Raulerson asked defendant how many crack cocaine rocks he had swallowed. Defendant responded that he had swallowed one rock. Detective Raulerson described the situation as an "emergency," explaining that he was concerned about the amount of crack cocaine defendant may have swallowed because "if he had swallowed too much we would have needed to take him to the hospital to have his stomach pumped." Detective Duncan, also present at the scene, testified that he heard the other officers telling defendant to "spit it out and not to chew it up anymore and not to swallow it, [b]ecause ... if one swallows too much crack cocaine, it will kill you."
Defendant moved to suppress his admission that he had swallowed one rock of crack cocaine, claiming his response was evoked by questions asked in violation of Miranda. The trial court denied the motion to suppress, finding that the questioning in this situation satisfied a "medical exception" to the Miranda rule. Defendant was subsequently found guilty of possession of a controlled substance, possession of drug paraphernalia, and resisting an officer without violence.
The state, while conceding that Miranda would otherwise apply, argues that the response should not be suppressed because the circumstances fall within the "public safety" exception to the Miranda rule set forth in New York v. Quarles, 467 U.S. 649, 104 S.Ct. 2626, 81 L.Ed.2d 550 (1984). In Quarles, the defendant was arrested in a supermarket. Police believed that just before the arrest the defendant had discarded a loaded firearm inside the supermarket in a place where a third party could gain access. Without first administering the Miranda warnings, police questioned the defendant about the location of the gun. The defendant responded with an inculpatory statement. The Supreme Court concluded that the statement need not be suppressed:
[W]e believe that this case presents a situation where concern for public safety must be paramount to adherence to the literal language of the prophylactic rules enunciated in Miranda.
Id. at 653, 104 S.Ct. at 2630 (emphasis supplied). When a life-threatening emergency arises, "the need for answers to questions in a situation posing a threat to the public safety outweighs the need for the prophylactic rule protecting the Fifth Amendment's privilege against self-incrimination." Id. at 657, 104 S.Ct. at 2632.
The Supreme Court held that the availability of the exception does not depend upon the motivation of the individual officers involved. Id. at 656, 104 S.Ct. at 2631-32. The Supreme Court acknowledged that most police officers would act for many different reasons, including protection of the public, protection of themselves, and the desire to obtain incriminating evidence from the suspect.
Whatever the motivation of individual officers in such a situation, we do not believe that the doctrinal underpinnings of Miranda require that it be applied in all its rigor to a situation in which police officers ask questions reasonably prompted by a concern for the public safety.

Id. (emphasis supplied).
Recognizing that emergencies require split-second decisions, the Supreme Court
decline[d] to place officers ... in the untenable position of having to consider, often in a matter of seconds, whether it best serves society for them to ask the necessary questions without the Miranda warnings and render whatever probative evidence *335 they uncover inadmissible, or for them to give the warnings in order to preserve the admissibility of evidence they might uncover but possibly damage or destroy their ability to ... neutralize the volatile situation confronting them.
Id. at 657-58, 104 S.Ct. at 2632-33.
No reported decision in Florida has yet addressed whether a medical emergency exception to Miranda should be created,[2] or has even applied the Quarles exception to justify the admission of a defendant's inculpatory statement, under any circumstances.[3] Since Quarles, however, several state and federal courts have addressed and applied the "public safety" exception to Miranda in a variety of circumstances, including concern for the safety of victims and police officers.[4] In United States v. Carrillo, 16 F.3d 1046, 1049-50 (9th Cir.), reversed in part on other grounds sub nom. United States v. Corona, 34 F.3d 876 (9th Cir.1994), the ninth circuit upheld the admission of the defendant's incriminating response because the "[officer's] question stemmed from an objectively reasonable need to protect himself from immediate danger." (Emphasis supplied).
In People v. Cressy, 47 Cal.App.4th 981, 55 Cal.Rptr.2d 237 (1996), the Quarles exception was likewise applied to justify the admission of responses to questions asked to protect the safety of a police officer. The California appellate court reasoned that there was "no logical explanation why the safety of an officer should be given less deference than the safety of the general public, particularly when the threat to an officer is often of a more immediate nature." Id. at 240.
In United States v. Mobley, 40 F.3d 688 (4th Cir.1994), cert. denied, 514 U.S. 1129, 115 S.Ct. 2005, 131 L.Ed.2d 1005 (1995), the fourth circuit, in considering Quarles, refused to permit the admission of the defendant's statements, solicited in violation of Miranda, where the government could not show that the police had an "immediate need" for information for their protection. Id. at 693. The fourth circuit held that "[a]bsent anobjectively reasonable concern for immediate danger to police or public, we must follow the rule, not the [Quarles] exception." Id. (emphasis supplied).
An analogous exception to the Miranda rule pertinent to the facts of this case is the rescue doctrine. Enunciated prior to Quarles, the rescue doctrine has never been squarely addressed by the Supreme Court. In People v. Riddle, 83 Cal.App.3d 563, 148 Cal.Rptr. 170, 177 (1978), the California appellate court held that three factors must be present for the state to successfully claim the rescue doctrine exception: (1) urgency of need in that no other course of action promises relief; (2) the possibility of saving human life by rescuing a person whose life is in danger; and (3) rescue as the primary purpose and motive of the interrogators.
In State v. Kunkel, 137 Wis.2d 172, 404 N.W.2d 69, 76 (App.1987), the Wisconsin appellate court referred to the "rescue doctrine" as a "private safety" exception, which *336 it deemed a necessary companion to the "public safety" exception of Quarles. See also State v. Provost, 490 N.W.2d 93 (Minn. 1992).
In State v. Stevenson, 51 Cal.App.4th 1234, 59 Cal.Rptr.2d 878 (1996), the California appeals court extended the rescue doctrine to facts analogous to our casea situation where the suspect's life may have been in jeopardy. In Stevenson, a deputy observed the defendant place something in his mouth and also saw a rock of cocaine drop to the ground. After arresting the defendant, the deputy observed a white residue in the defendant's mouth. It appeared to the deputy that the defendant had chewed up rock cocaine.
Concerned with a possible overdose, the deputy immediately transported the defendant to a local hospital. The emergency room doctor stated that the defendant was at risk of acute myocardial infarction and hemorrhagic stroke. In response to questioning by the officer, the defendant initially denied ingesting any narcotics. However, when told about the risk of ingesting any controlled substances, "appellant reluctantly admitted he had swallowed six to eight pieces of rock cocaine." Id. at 879.
The Stevenson court found that the deputy had a reasonable belief that the defendant had consumed cocaine because the deputy saw the defendant place his hand to his mouth, recovered the rock of cocaine that dropped as the defendant's hand went to his mouth, and observed white residue in his mouth. The deputy, aware that cardiac arrest and death can result from a cocaine overdose, testified he felt an "obligation and responsibility" to make sure that the defendant received treatment if he had consumed a dangerous amount of narcotics. Id. at 881.
In rejecting the defendant's contention that the emergency doctrine applies only when the life of a victim, an officer, or the public-at-large is at risk, and not the suspect alone, the court observed that "[w]hen a life is in danger, the law should make no distinctions." Id. Concluding that all three requirements of the rescue doctrine were present, the Stevenson court reasoned:
[W]hen it is the arrestee's life which is in jeopardy, the police are equally justified in asking questions directed toward providing life-saving medical treatment to the arrestee without first warning the arrestee that his answers can be used against him in a court of law.
Id.
Although not considering the possible application of the rescue doctrine, the Utah appellate court in State v. Montoya, 937 P.2d 145 (Utah.Ct.App.1997), held that the public safety exception to the Miranda requirement did not apply to excuse the failure to administer Miranda warnings before the police asked the defendant whether he had been using heroin. In Montoya, the defendant was arrested for public intoxication. An officer, who arrived some time after the arrest, observed that the defendant was progressively worsening, that he was foaming at the mouth, displaying jittery movements, and had marks on his arms indicating that he had been injecting substances intravenously.
The officer asked the defendant whether he had done some "cheve," which according to the officer was a street term for heroin. The defendant responded in the affirmative. Id. at 147. In reversing the trial court's denial of the motion to suppress the defendant's inculpatory response, the appellate court concluded that to expand the "narrow exception" of Quarles where only a defendant's safety may be at risk, and not the safety of the public-at-large, would go far beyond the underlying purpose of Quarles. Id. at 151.
We disagree that the reasoning behind the Quarles exception is not equally applicable in cases where a defendant appears to be suffering from a medical emergency, especially where the officer is required to make a split-second decision in response to an imminent threat to the defendant's health. The Quarles court ultimately justified the admission of the defendant's statement, taken without the benefit of the Miranda warnings, because "concern for public safety must be paramount to adherence to the literal language of the prophylactic rules enunciated in Miranda." Quarles, 467 U.S. at 653, 104 S.Ct. at 2630. We agree *337 with Stevenson that there is no legitimate distinction where it is the suspect's own safety at issue.
The reasoning behind both the Quarles exception and the rescue doctrine is that a narrow exception to Miranda should arise when the primary objective of the questioning is to save human life:
[T]he two basics of the Miranda opinion relevant here are (1) its assumption that the purpose of custodial interrogation is to further criminal prosecution, and (2) its public policy to outlaw police misconduct relating to the third degree. Neither point is central to the question of police conduct in emergencies, where the primary objective of police action is to save human life.
Stevenson, 59 Cal.Rptr.2d at 880 (citing Riddle, 148 Cal.Rptr. at 176).
The Miranda rule is not a constitutional guarantee, but a prophylactic rule to protect the Fifth Amendment privilege against compulsory self-incrimination. See Quarles, 467 U.S. at 654, 104 S.Ct. at 2630-31. In this case, the defendant does not submit that his statement was coerced, or otherwise involuntaryonly that the Miranda warnings were not first administered by the deputies. We agree with Stevenson, that in this case
[t]he doctrinal underpinnings of Miranda do not require us to exclude appellant's statement, thus penalizing the deputy for asking the very questions which were the most crucial to the effort to provide appellant with medical treatment.
Stevenson, 59 Cal.Rptr.2d at 881.
The questioning in this case stemmed from an objectively reasonable concern over an immediate threat to defendant's health. The officers witnessed the defendant swallowing the contents of a film canister, which the officers reasonably believed contained cocaine. They did not know how much cocaine defendant swallowed, but if he had ingested too much, he could have overdosed. Detective Raulerson asked the question in response to an emergency situation which unfolded before his eyes. Objectively, it appears that his motive was to ascertain what defendant swallowed, not what he possessed.
Officers in such an emergency situation should not be placed in the untenable position of having to choose between having the response and any "fruits" of the response excluded and potentially saving the defendant's life. See Quarles, 467 U.S. at 657-58, 104 S.Ct. at 2632-33. Neither defendants nor society would benefit from the application of an inflexible rule under these narrow circumstances.
A necessary ingredient in this medical emergency exception is that there must be an "objectively reasonable concern for immediate danger." Mobley, 40 F.3d at 693. This ingredient, which is present here and in Stevenson, may have been missing under the facts the Utah appellate court considered in Montoya. The Montoya court noted that the defendant could have been given the Miranda warnings well prior to questioning the defendant. Montoya, 937 P.2d at 151 n. 9. Here, the police questioning stemmed from an immediate threat to defendant's health, which required quick action without time for the Miranda warnings. In such a situation, the necessity of protecting the defendant's health must take precedence over the procedural safeguards of Miranda.
This case also fits into the threeprong test of the "rescue" doctrine. See Stevenson, 59 Cal.Rptr.2d at 881; Kunkel, 404 N.W.2d at 76. The need for the information was urgent; there was a possibility of rescuing a person whose life may have been in danger; and rescue of the defendant objectively appears to be the primary purpose and motive of the interrogator. Strict adherence to the three-prong test of the rescue doctrine in conjunction with the Mobley requirement that there be an objectively reasonable concern for immediate danger should ensure that a medical emergency exception to Miranda is both narrowly circumscribed and applied.
In this case the police were faced with a medical emergency and a potentially lifethreatening situation, which they personally witnessed. Most citizens would consider the police to be derelict in their duties if they administered the Miranda warnings before addressing a life-threatening situation. The right to remain silent would be of little practical *338 value to a defendant who becomes comatose from a drug overdose while being read his Miranda rights.
DELL and GROSS, JJ., concur.
NOTES
[1] Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).
[2] Although the Fifth Amendment does not have the reasonableness requirement as does the Fourth Amendment, the Supreme Court in New York v. Quarles, 467 U.S. 649, 651, n. 2, 104 S.Ct. 2626, 2629-30, n. 2, 81 L.Ed.2d 550 (1984) found factually similar Fourth Amendment cases to be helpful in its analysis. In at least two reported decisions, State v. Hutchins, 636 So.2d 552 (Fla. 2d DCA 1994) and Gilbert v. State, 289 So.2d 475 (Fla. 1st DCA 1974), Florida courts have upheld the fruits of an otherwise illegal search conducted in an emergency because the officer had a "good faith belief that the search was reasonably necessary to assist the defendant in a life-threatening situation." Hutchins, 636 So.2d at 553.
[3] In State v. Ruiz, 526 So.2d 170 (Fla. 3d DCA 1988), the third district declined to address the public-safety-exception argument raised by the state because they found that the defendant was not in custody for Miranda purposes. In State v. Meola, 488 So.2d 645 (Fla. 2d DCA 1986), the second district acknowledged the "public safety" exception but refused to apply it on the facts of that case, because the gun at issue was "not hidden in a public area," but was in plain view in the front seat of the defendant's car which was being impounded.
[4] See, e.g., United States v. Mobley, 40 F.3d 688 (4th Cir.1994), cert. denied, 514 U.S. 1129, 115 S.Ct. 2005, 131 L.Ed.2d 1005 (1995); United States v. Brady, 819 F.2d 884 (9th Cir. 1987); State v. Ramirez, 178 Ariz. 116, 871 P.2d 237 (1994); People v. Cressy, 47 Cal.App.4th 981, 55 Cal.Rptr.2d 237 (1996); State v. Provost, 490 N.W.2d 93 (Minn.1992); State v. Kunkel, 137 Wis.2d 172, 404 N.W.2d 69 (1987).