158 P.3d 201

**STATE of Arizona, Appellee,**

v.

**Tommy Earl LONDO, Appellant.**

**Nos. 1 CA–CR 05–1190, 1 CA–CR 05–1191.**

Court of Appeals of Arizona,
Division 1, Department D.

Nov. 6, 2006.

As Amended Nov. 3, 2006.

Terry Goddard, Attorney General By Randall M. Howe, Chief Counsel, Criminal Appeals Section, and Cassie Bray Woo, As-sistant Attorney General, Phoenix, Attorneys for Appellee.

James J. Haas, Maricopa County Public Defender By Christopher Johns, Deputy Public Defender, Phoenix, Attorneys for Appellant.

**OPINION**

OROZCO, Judge.

¶1 Defendant Tommy Earl Londo (Defendant) appeals his conviction for sale or transfer of narcotic drugs on the ground that his admission he swallowed crack cocaine was obtained involuntarily and/or in violation of his *Miranda*[1] rights. We hold that Defendant's statements were not obtained in violation of *Miranda* and the trial court did not err by admitting his confession. We view the facts in the light most favorable to sustaining the conviction. *State v. Guerra*, 161 Ariz. 289, 293, 778 P.2d 1185, 1189 (1989). On July 21, 2004, Defendant was arrested as part of an undercover drug investigation near the homeless shelter in Phoenix. Detective Derbert Wheeler observed Defendant handing crack cocaine to a person from whom the police had arranged to purchase the illegal drug. Shortly after his arrest, Defendant began gagging and did not respond when an officer asked him if everything was okay. Defendant started to sway, vomit and "froth was coming from his mouth." Believing that Defendant was experiencing a medical emergency, the officer asked him if he swallowed crack cocaine and Defendant admitted he had.[2]

¶2 The jury convicted Defendant of the sale or transfer of narcotic drugs, and he was sentenced to 15.75 years in prison. The judge also found that Defendant violated the terms and conditions of his probation imposed in December 2003 on a guilty plea to possession of drug paraphernalia and resisting arrest and sentenced him to one-year prison terms on each of the two counts, all sentences to be served concurrently. Defendant timely appealed his conviction for sale

---

1. *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

2. After paramedics were called to the scene by the officer and evaluated Defendant, the officer transported him to a nearby emergency room for treatment.

of narcotic drugs and the sentences imposed for his probation violation, and the appeals were consolidated. We have jurisdiction pursuant to Article 6, Section 9, of the Arizona Constitution and Arizona Revised Statutes (A.R.S.) sections 12–120.21.A.1 (2003) and 13–4033 (2001).

¶ 3 Defendant argues on appeal that the judge committed reversible error by admitting his confession that he had swallowed crack cocaine because the confession was involuntary and/or obtained in violation of his *Miranda* rights. Defendant concedes that he did not file a motion to suppress his admission before trial, but argues that the untimeliness his motion was justified because the State failed to disclose the existence of the confession prior to trial.

¶ 4 To avoid preclusion for failure to file a pre-trial motion to suppress, the Arizona Rules of Criminal Procedure require the Defendant to demonstrate that the basis of his motion was not known prior to trial and could not have been known through the exercise of reasonable diligence, and he raised the motion promptly upon learning of its basis. Ariz. R.Crim. P. 16.1.c. The record does not support Defendant's argument that the untimeliness of his motion was justified because the State failed to disclose his confession before trial. The record indicates that on the first day of trial, after a brief meeting in chambers, Defendant's counsel stated on the record that he "had misread the discovery in this case" and erroneously thought that police had advised Defendant of his *Miranda* rights before obtaining an admission that he had swallowed crack cocaine. The record provides no support for Defendant's claim the admission was not contained in the police report.[3] On this record, it was not an error for the judge to deny the motion as untimely. *See* Ariz. R.Crim. P. 16.1.c.

¶ 5 Nor do we find any error in the judge's ruling on the merits. "A trial court's decision to admit a defendant's statement is reviewed for an abuse of discretion, based on the evidence presented at the suppression hearing. The evidence is viewed in the light

most favorable to upholding the trial court's ruling." *State v. Ellison*, 213 Ariz. 116, 126, ¶ 25, 140 P.3d 899, 909 (2006). (Citations omitted.) In this case, after Defendant made his oral motion to suppress the confession the first day of trial, the judge asked the officer who had elicited the confession to clarify the circumstances under which he obtained the confession. The officer said he had worked in the homeless shelter and had observed "a chronic problem of individuals swallowing or ingesting cocaine base and becoming violently ill as a result of that." Based on his experience, he perceived Defendant's symptoms to potentially constitute a medical emergency. The judge ruled suppression was not warranted because the officer's inquiry whether Defendant had swallowed crack cocaine was in response to a medical emergency and not "an intentional nor a reckless casting aside of a defendant's rights."

¶ 6 The judge did not err in admitting the confession notwithstanding the failure of the officer to obtain a waiver of Defendant's rights under *Miranda*. We hold, first, that the officer's inquiry of Defendant as to whether he had swallowed crack cocaine did constitute "custodial interrogation," to which *Miranda's* procedural safeguards apply. *See Miranda*, 384 U.S. at 444, 86 S.Ct. 1602. The State concedes, and the record shows, that Defendant was in custody at the time of the questioning. We further hold that the officer's question constituted interrogation for purposes of *Miranda*. Interrogation "refers not only to express questioning, but also to any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect." *Rhode Island v. Innis*, 446 U.S. 291, 301, 100 S.Ct. 1682, 64 L.Ed.2d 297 (1980). The officer should have known that his question as to whether Defendant had swallowed crack cocaine was reasonably likely to elicit an incriminating response, and it therefore constituted interrogation. *See id.;*

---

**3.** Defendant's Reply Brief does not deny the State's avowal in its Answering Brief that the     police report contained the information..

*cf. State v. Smith,* 193 Ariz. 452, 458, ¶¶ 19–20, 974 P.2d 431, 437 (1999) (holding that officer's response, "What meth?", to defendant's comment that he had recently used methamphetamine did not constitute interrogation because the officer's statements "were not made ... with the expectation that they would lead to incriminating statements by the defendant.").

¶ 7 However, because the officer was responding to what he reasonably perceived as a potentially life-threatening medical emergency involving Defendant while Defendant was in his custody, the statement was admissible notwithstanding the officer's failure to obtain a waiver of *Miranda* rights beforehand. The United States Supreme Court has recognized a "public safety exception" to the requirement that *Miranda* warnings be given before a suspect's answers may be admitted into evidence. This exception was first applied in *New York v. Quarles,* 467 U.S. 649, 655–56, 104 S.Ct. 2626, 81 L.Ed.2d 550 (1984), when police questioned a rape suspect captured in a supermarket about the location of the gun that was missing from his holster. The Court reasoned that "the need for answers to questions in a situation posing a threat to the public safety outweighs the need for the prophylactic rule protecting the Fifth Amendment's privilege against self-incrimination." *Id.* at 657, 104 S.Ct. 2626; *see also State v. Ramirez,* 178 Ariz. 116, 124, 871 P.2d 237, 245 (1994) (applying the public safety exception to admit a statement made in response to police questions aimed at de-

termining what they would encounter when they proceeded further into apartment, past a body on the floor of blood-spattered room).

¶ 8 Courts in other jurisdictions have adopted a parallel exception to *Miranda* for application when the safety of a person is at risk, on the premise that "[w]hile life hangs in the balance, there is no room to require admonitions concerning the right to counsel and to remain silent." *People v. Stevenson,* 51 Cal.App.4th 1234, 59 Cal.Rptr.2d 878, 880 (1996). (Citation omitted.) *cf. State v. Schinzel,* 202 Ariz. 375, 381, ¶ 24, 45 P.3d 1224, 1230 (App.2002) (recognizing the *Stevenson* exception to *Miranda,* but holding that no similar exception applied in that case).

¶ 9 This exception, referred to as the "private safety exception," or the "rescue doctrine," has been held in several jurisdictions to apply under circumstances such as those presented here, when the suspect himself is reasonably considered to be in urgent need of rescue to avoid serious injury or death. *See Stevenson,* 59 Cal.Rptr.2d at 880–81 (holding that statement by defendant that he had swallowed crack cocaine was admissible despite lack of *Miranda* warnings under the "rescue doctrine"); *Benson v. State,* 698 So.2d 333, 337–38 (Fla.Dist.Ct.App.1997) (holding that "the necessity of protecting the defendant's health must take precedence over the procedural safeguards of *Miranda.*");[4] *contra State v. Montoya,* 937 P.2d 145, 151–52 (Utah Ct.App.1997).[5]

---

**4.** The rescue doctrine has also been applied in the following cases: *State v. Betances,* 265 Conn. 493, 828 A.2d 1248, 1255–57 (2003) (extending the public safety exception to *Miranda* and holding defendant's response to the question whether "he swallowed any drugs" was admissible despite the lack of *Miranda* warnings); *Thomas v. State,* 128 Md.App. 274, 737 A.2d 622, 632 (Ct. Spec.App.1999) (holding that *Miranda* warnings were not necessary when asking if a defendant, who bit an officer, had a transmittable disease); *State v. Provost,* 490 N.W.2d 93, 96–97 (Minn. 1992) (adopting and applying the rescue doctrine to admit defendant's statements to the police to locate his wife who was missing in a wildlife refuge); *People v. Swoboda,* 190 Misc.2d 214, 737 N.Y.S.2d 821, 822–828 (N.Y.Crim.Ct.2002) (distinguishing the rescue doctrine from the public safety exception and applying the rescue doctrine to admit statements of the defendant relating to

the location of her missing baby); *State v. Kunkel,* 137 Wis.2d 172, 404 N.W.2d 69, 76 (Ct.App. 1987) (applying the rescue doctrine to admit the defendant's statements relating to the whereabouts of his missing daughter).

**5.** In *Montoya,* the Utah Court of Appeals held that the public safety exception did not apply to protect an individual defendant's personal safety. 937 P.2d at 151. In doing so, the court did not cite to nor analyze any cases applying the rescue doctrine. It summarily dismissed the argument stating, "[t]he State's attempt to expand the 'narrow exception' devised in *Quarles* to a situation in which a personal defendant's personal safety may be at risk goes far beyond the underlying purpose of the public safety exception to the *Miranda* rule, and we decline to so extend the exception." *Id.*

¶ 10 Under the rescue doctrine, courts apply a three prong test to determine whether the statement is excepted from *Miranda*, asking whether there exists: 1) an urgent need, and no other course of action promises relief; 2) the possibility of saving a human life by rescuing a person in danger; and 3) rescue is the primary purpose and motive of the interrogator. *People v. Riddle*, 83 Cal.App.3d 563, 148 Cal.Rptr. 170, 177 (1978). "A necessary ingredient in this medical emergency exception is that there must be an 'objectively reasonable concern for immediate danger.' " *Benson*, 698 So.2d at 337. (Citation omitted.)

¶ 11 It is clear that the record supports the officer's and meets all standards for admissibility under the "rescue doctrine" or "private safety exception" to *Miranda*. First, there was an urgent need for the information because Defendant was vomiting and frothing at the mouth. Second, the officer testified that based on his experience in working at a homeless shelter, he knew that swallowing crack cocaine can be "life threatening" and the officer needed to determine the cause of Defendant's illness to provide assistance. Third, the officer testified that his primary motive for asking the question was to prevent Defendant's death in his custody. That the officer's primary motivation was to provide medical assistance to the Defendant rather than elicit incriminating statements is supported by the fact that he immediately called the paramedics and transported the Defendant to the emergency room. Finally, we hold that the officer acted with an objectively reasonable concern of immediate danger associated with a potential drug overdose based on the Defendant's physical condition while in custody. To the extent it was necessary for the trial court to address the merits of the admissibility of Defendant's statement, we find no error. *See Stevenson*, 59 Cal. Rptr.2d at 880–81.

¶ 12 Defendant argues, for the first time on appeal, that his illness and/or possible intoxication rendered him unable to vol-untarily confess. He also claims the officer's inquiry constituted a threat that he would not get medical attention unless he confessed to having swallowed cocaine. By failing to raise these objections below, Defendant waived all but fundamental error review. *See State v. Henderson*, 210 Ariz. 561, 567, ¶ 19, 115 P.3d 601, 607 (2005); *State v. Wilson*, 164 Ariz. 406, 407, 793 P.2d 559, 560 (1990)(holding that the State did not have the burden to prove voluntariness of statement, absent filing of procedurally proper suppression motion). Fundamental error is "error going to the foundation of the case, error that takes from the defendant a right essential to his defense, and error of such magnitude that the defendant could not possibly have received a fair trial." *Henderson*, 210 Ariz. at 567, ¶ 19, 115 P.3d at 607. (Citations omitted.)

¶ 13 In this case, we find no error. The fact that Defendant was ill or possibly intoxicated at the time he confessed may be relevant to whether he was susceptible to coercive police conduct, but it does not by itself render the confession involuntary. *See State v. Smith*, 193 Ariz. 452, 457, ¶ 14, 974 P.2d 431, 436 (1999).[6] Moreover, the record fails to reveal that the officer's interrogation was in any way coercive, a necessary predicate to finding it involuntary. *See id.* The officer testified at trial that he had not made any threats or promises before Defendant confessed that he had swallowed the crack cocaine. The evidence fails to support Defendant's argument that the officer's question alone could reasonably be construed as a threat to withhold medical attention unless Defendant confessed. The officer testified that he asked the question because he believed that Defendant faced a potentially life-threatening emergency. In ruling the confession admissible, the trial judge implicitly found that the officer asked the question out of concern for the welfare of Defendant, and, by implication, did not do so in a threatening manner. We see nothing improper or coercive about the officer's question, and hold

---

6. No evidence suggests that Defendant was so intoxicated that he could not understand the meaning of the officer's question. *See State v. Tucker*, 157 Ariz. 433, 446, 759 P.2d 579, 592 (1988) (noting that extreme intoxication does not rob a confession of voluntariness but might undermine its reliability).

that under these circumstances, defendant's confession was voluntary.

¶ 14 For the foregoing reasons, we affirm Defendant's convictions and sentences.

CONCURRING: SHELDON H. WEISBERG, Presiding Judge and PHILIP HALL, Judge.

