NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

STATE OF ARIZONA, *Appellee,*

*v.*

STEPHEN E. PHILBROOK, *Appellant.*

No. 1 CA-CR 22-0235
FILED 5-23-2023

Appeal from the Superior Court in Maricopa County
No.  CR2019-006280-001
The Honorable Roy C. Whitehead, Judge

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Kevin M. Morrow
*Counsel for Appellee*

Brown & Little PLC, Chandler
By Matthew O. Brown
*Counsel for Appellant*

---

**MEMORANDUM DECISION**

Judge Brian Y. Furuya delivered the decision of the Court, in which Vice Chief Judge David B. Gass and Judge Andrew M. Jacobs joined.

---

**F U R U Y A**, **Judge:**

¶1        Stephen E. Philbrook appeals his convictions and sentences for molestation of a child and sexual exploitation of a minor, arguing the trial court should have suppressed incriminating statements he made during a police interview, and the prosecutor engaged in misconduct at trial. Finding no error, we affirm.

## FACTS AND PROCEDURAL HISTORY

¶2        Philbrook lived in Glendale with his girlfriend, "Julie," [1] and Julie's young daughter, "Natalee," when he and Julie had a baby boy. Julie moved out in 2016, but Philbrook continued giving her money "to help her get back on her feet." And although she left the children under Philbrook's care, Julie would frequently visit them at his home.

¶3        During one of those visits in 2018, Julie found a video on Philbrook's phone that showed eight-year-old Natalee sitting on Philbrook's lap while "he's touching her." Natalee was not wearing underwear and the video was recorded from under a table where the two were sitting on a chair. Julie took the phone and called the police.

¶4        Detectives arrested Philbrook and obtained a warrant to search his home. At Philbrook's subsequent early-morning interview, the first detective advised him of his *Miranda* rights. Philbrook said he understood, and the interview proceeded. The second detective joined the interview one hour later. Telling Philbrook, "We know about everything," the second detective described incriminating evidence collected during the search of Philbrook's home. The second detective questioned Philbrook in an aggressive and loud manner, repeatedly using explicit language, stated that Philbrook "look[ed] like a monster . . . preying on this poor little girl," and twice told Philbrook to "man up."

---

[1]        "Julie" and "Natalee" are the pseudonyms used in the State's Answering Brief.

¶5        Philbrook immediately interjected and admitted he "made bad decisions . . . but I never meant to hurt her." When asked how many times he had touched Natalee's vagina, Philbrook responded, "I can't believe I did it even once" before admitting, "Once or twice . . . if that." Philbrook then explained that he did not know the video of Natalee sitting on his lap was saved on his phone. "I thought [it was] deleted," he said. A video recording of the interview was admitted at trial without objection and played for the jury.

¶6        Contrary to what he told Philbrook during the interview, the second detective admitted at trial he had not at that time personally viewed the video on Philbrook's phone. Philbrook testified he either did not recall making the inculpatory statements or he falsely confessed because he was "in . . . unbearable pain" from his psoriatic arthritis, which was exacerbated by his cold jail cell. Philbrook explained he was "just trying to get out of there" because the second detective was "really aggressive."

¶7        After the defense concluded its case, the court instructed the jurors not to consider any statements made by Philbrook during his interview unless they determined beyond a reasonable doubt that he made the statements voluntarily. The court then instructed: "The defendant's statement was not voluntary if it resulted from the defendant's will being overcome by a law enforcement officer's use of any sort of violence, coercion, or threats, or by any direct or implied promise, however slight." Philbrook's closing argument followed, and he urged the jury to find his statements were involuntary because the detective "lied" to him, "got up in his face[,]" and "bullied him until he started saying what they wanted him to say."

¶8        The jury found Philbrook guilty on one count each of molestation of a child and sexual exploitation of a minor. The trial court imposed presumptive and consecutive 17-year prison terms.

¶9        Philbrook timely appealed, and we have jurisdiction under Arizona Revised Statutes ("A.R.S.") §§ 12-120.21(A)(1), 13-4031, and -4033(A)(1).

## DISCUSSION

### I.        Philbrook's Statements to the Detectives were Voluntary.

¶10        Philbrook argues the trial court erred by admitting evidence of his confessions. *See* A.R.S. § 13-3988(C) (defining "confession," in part, as "any self-incriminating statement made or given orally or in writing.").

According to Philbrook, he confessed involuntarily and his incriminating statements therefore should have been suppressed.[2]

¶11 Philbrook admits he did not file a pretrial motion in superior court seeking to suppress his statements on voluntariness grounds. *See* Ariz. R. Crim. P. 16.1(b) ("Parties must make all motions no later than 20 days before trial[.]"). He also concedes he did not raise a similar objection at trial. *See State v. Alvarado*, 121 Ariz. 485, 488 (1979) (defendant has the burden of raising issues regarding voluntariness).

¶12 In the absence of a trial objection, when a question of voluntariness is raised by the evidence, a trial court is not required to sua sponte conduct a hearing to determine whether a defendant's confession was voluntary; rather, the court has discretion to do so. *Bush*, 244 Ariz. at 588–90 ¶¶ 53–62. Similarly, if a defendant does not request a pretrial suppression hearing, a court may exercise its discretion and suppress a confession after finding the trial evidence establishes the defendant confessed involuntarily. *See State v. Davolt*, 207 Ariz. 191, 208 ¶ 60 (2004) ("The admission of evidence is within the trial court's discretion and will not be disturbed absent an abuse of discretion.").

¶13 Because Philbrook did not move to suppress his confessions or object to their admission at trial on voluntariness grounds, he bears the burden on appeal of establishing fundamental error. *State v. Escalante*, 245 Ariz. 135, 140, 142 ¶¶ 12, 21 (2018); *see State v. Londo*, 215 Ariz. 72, 76 ¶ 12 (App. 2006) (reviewing defendant's claim of an involuntary confession for fundamental error because he raised the issue "for the first time on appeal"). To carry his burden, Philbrook must prove either error and resulting prejudice or that the error "was so egregious that he could not possibly have received a fair trial." *Escalante*, 245 Ariz. at 142 ¶ 21. That is, to prevail on appeal, Philbrook must first establish the trial court abused its discretion by failing to sua sponte suppress evidence of his confessions. *See id.* ("[T]he first step in fundamental error review is determining whether trial error exists."). He did not do so.

---

[2] Philbrook does not argue the court abused its discretion by failing to hold an evidentiary hearing to determine the voluntariness of his statements before admitting them. *See State v. Bush*, 244 Ariz. 575, 590 ¶ 62 (2018) ("[I]f a trial court is aware of facts indicating that a confession was involuntary, the court, in its discretion and even absent a request, may order a voluntariness hearing.").

¶14     A defendant's statements to police are admissible if they are voluntary and not obtained by coercion or improper inducement. *Haynes v. Washington*, 373 U.S. 503, 513 (1963); *see* A.R.S. § 13-3988(A). "In assessing voluntariness, we consider the totality of circumstances to determine whether the statements were or were not the product of a 'rational intellect and a free will.'" *State v. Hoskins*, 199 Ariz. 127, 137 ¶ 28 (2000) (quoting *Mincey v. Arizona*, 437 U.S. 385, 398 (1978)). "[C]oercive police activity is a necessary predicate to the finding that a confession is not 'voluntary[.]'" *Colorado v. Connelly*, 479 U.S. 157, 167 (1986).

¶15     The evidence supports Philbrook's contention that the second detective's questioning was "aggressive" and "confrontational." But we find no support for Philbrook's assertion that he was treated "inhumane[ly.]" Indeed, the recorded interview is consistent with the first detective's testimony that Philbrook appeared to understand the conversation and did not assert he was too tired or in too much pain to continue the interview. In fact, Philbrook did not refuse to answer questions for any reason. Nor did he otherwise invoke his right to remain silent. And although Philbrook was visibly shivering and complained of being cold when he entered the interview room, he immediately agreed with the first detective's assessment that the room was "warmer." As the interview progressed, Philbrook stopped shivering and he did not repeat his initial complaint about the temperature.

¶16     The interview video also supports the jury's apparent determination the second detective's questioning did not overcome Philbrook's will and thus was not coercive. During the interview, the second detective—who was not wearing a uniform and did not have a gun—made no threats or promises. He was seated at a table opposite Philbrook throughout his questioning. Philbrook's testimony that he was "just trying to get out of there" because he was cold and in pain from his psoriatic arthritis was therefore insufficient to find his confessions were involuntary. *State v. Smith*, 193 Ariz. 452, 457 ¶ 14 (1999) ("Coercive police activity is a necessary predicate to the finding that a confession is not voluntary[.] When evaluating coercion, the defendant's physical and mental states are relevant to determine susceptibility to coercion, but alone are not enough to render a statement involuntary.") (Internal quotation marks and citations omitted). And the second detective's misrepresentation he had personally viewed the video found on Philbrook's phone was also insufficient to render the confessions involuntary. *See State v. Winters*, 27 Ariz. App. 508, 511 (1976) ("Generally, deception alone does not render a statement inadmissible. . . . A statement induced by fraud or trickery is not made involuntary unless there is additional evidence indicating that the

defendant's will was overborne or that the confession was false or unreliable."). Moreover, that deception was on a collateral point, given the video on the phone was in the State's possession, so that its contents were available to the second detective and known to Philbrook in the first place. Finally, while Philbrook's confession occurred in a ninety-minute interrogation in the middle of the night, he does not argue that fatigue or the unusual hour of interrogation overbore his will. *See United States v. Castro-Higuero*, 473 F.3d 880, 886 (8th Cir. 2007) (explaining "that early morning/late night interrogations are not in themselves coercive").

¶17 On this record, the court acted within its discretion by not suppressing evidence of Philbrook's confessions. No error, fundamental or otherwise, occurred. *Cf. State v. Strayhand*, 184 Ariz. 571, 582 n.3 (App. 1995) (finding trial court committed fundamental error by failing to sua sponte suppress confessions because "the admission of the [d]efendant's confessions [that] followed repeated refusals to honor his invocation of his right to remain silent and which were based on threats constitutes a denial of due process[.]").

## II.    This Record Does Not Support Allegations of Prosecutorial Misconduct.

¶18 Philbrook argues the prosecutor engaged in misconduct by questioning him in front of the jury about the existence of evidence the court had previously ruled was inadmissible. Allegations of prosecutorial misconduct requires showing "intentional conduct which the prosecutor knows to be improper and prejudicial . . . [and] not merely the result of legal error, negligence, mistake, or insignificant impropriety." *State v. Lapan*, 249 Ariz. 540, 548–9 ¶ 25 (App. 2020) (quoting *State v. Martinez*, 221 Ariz. 383, 393 ¶ 36 (App. 2009) (cleaned up). In other words, unlike prosecutorial error, prosecutorial misconduct must "imply a concurrent ethical rules violation." *State v. Shortman*, 254 Ariz. 338, 410 ¶ 20 (App. 2022) (quoting *State v. Murray*, 250 Ariz. 543, 548 ¶ 12 (2021)). Because Philbrook failed to allege any ethical violation by the prosecutor at trial, we consider his argument as one of prosecutorial error.

¶19 Philbrook also cannot show prosecutorial error. Prosecutorial error requires showing both that error occurred and "a reasonable likelihood exists that the [error] could have affected the jury's verdict, thereby denying [the] defendant a fair trial." *Murray*, 250 Ariz. at 548 ¶ 13 (quoting *State v. Anderson*, 210 Ariz. 327, 340 ¶ 45 (2005). Here however, the record belies that argument.

¶20         The day after the State concluded its case-in-chief, Philbrook disclosed handwritten documents he claimed proved his "loans" to Julie. The trial court sustained the State's objection to the documents' admission, finding Philbrook's disclosure was untimely. The court, however, allowed the parties to present testimony "regarding the issues [they] would like to elicit testimony on[.]"

¶21         Philbrook then explained on direct examination he loaned Julie $20,000 over the course of two years "for food and stuff" and, approximately one week before "this all went down," Julie learned she would be getting $30,000 from Natalee's father for "back child support[.]" Of that amount, Philbrook noted Julie's attorney "wanted a cut[,]" but "no matter what, I wanted my $20,000 back[.]"

¶22         During her cross-examination of Philbrook, the prosecutor referenced Philbrook's testimony that "there was some sort of an order where [Julie] was going to have to pay you money[,]" before beginning to ask: "You haven't provided any documents or any other information that would show—." Philbrook's counsel promptly interrupted, and apparently alluding to the loan paperwork the court precluded, she objected to "Mr. Philbrook not having any documents to support this allegation." The prosecutor clarified for the court that "there hasn't been anything to support that there was some sort of judgment, or a court order, or anything in 2018, [which] he has testified to this morning." The court overruled the objection, and the prosecutor continued questioning Philbrook, who stated, "There was not a judgment from the court, but it was an agreement between me and her."

¶23         The record therefore shows the prosecutor's incomplete question on cross-examination referred to the lack of documentation corroborating Philbrook's direct testimony Julie received $30,000 in a court proceeding involving back child support owed by Natalee's father. The prosecutor did not, as Philbrook argues, refer to the loan documents the trial court had precluded. Accordingly, we reject Philbrook's claim of prosecutorial misconduct. The prosecutor did not err, let alone commit misconduct. *See In re Martinez*, 248 Ariz. 458, 470 ¶ 47 (2020) ("When reviewing the conduct of prosecutors in the context of 'prosecutorial misconduct' claims, courts should differentiate between 'error,' which may not necessarily imply a concurrent ethical rules violation, and 'misconduct,' which may suggest an ethical violation.").

**CONCLUSION**

¶24 For the foregoing reasons, we affirm Philbrook's convictions and sentences.



AMY M. WOOD • Clerk of the Court
FILED: AA